***NOT FOR PUBLICATION***

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| STATE OF WEST VIRGINIA, *ex rel.* DARRELL V. MCGRAW, JR., ATTONREY GENERAL, <br><br> Plaintiff, <br><br> v. <br><br> BRISTOL MYERS SQUIBB CO., *et al.*, <br><br> Defendants. | Civil Action No.: 13-1603 (FLW) <br><br> **OPINION** |

**WOLFSON, District Judge:**

In this *parens patriae*[1] action, the State of West Virginia, by its Attorney General, Darrell V. McGraw, Jr. ("Plaintiff" or the "State"), alleges that Bristol-Meyers Squibb Company ("BMS"), Sanofi-Aventis U.S., LLC, Sanofi US Services, Inc. and Sanofi-Synthelabo, Inc. (collectively, "Defendants"), engaged in unfair and deceptive marketing practices relating to the efficacy of Plavix, an anti-clotting prescription drug. Initially, Plaintiff brought suit in West Virginia State Court; however, upon removal by Defendants to the United States District Court for the Northern District of West Virginia, this case was

---

[1] *Parens patriae*, literally "parent of the country," is a doctrine that provides a state with standing to sue as a guardian of its citizens when the state can "articulate an interest apart from the interests of particular private parties." *LG Display Co., Ltd. v. Madigan*, 665 F.3d 768, 771 (7th Cir. 2011); *Allegheny Gen. Hosp. v. Philip Morris*, 228 F.3d 429, 436-37 (3d Cir. 2000); *Pennsylvania v. Porter*, 659 F.2d 306, 328 (3d Cir. 1981).

1

transferred to this Court by the Multi-District Litigation ("MDL") Panel as a part of the *In re Plavix* MDL. In the instant matter, the State moves for remand. For the reasons set forth below, the Court **GRANTS** the State's request, and accordingly, this matter is transferred to the District Court in the Northern District of West Virginia for the purpose of remanding this case to the Circuit Court of Marshall County, West Virginia.

## BACKGROUND

The underlying facts of this case are largely not relevant to the issues presented in the present motion. Suffice to say, the State accuses Defendants of deceptively marketing Plavix by wrongfully asserting that Plavix is a superior drug to aspirin for certain indicated usages and charging approximately one hundred times more for Plavix than aspirin despite knowing that Plavix have no such superior efficacy. The State filed the Complaint against Defendants in the Circuit Court of Marshall County, West Virginia on December 28, 2012. The Complaint only asserts West Virginia state law claims, which include: 1) violations of the West Virginia Consumer Credit Protection Act ("CCPA"), W. Va. Code §§ 46A17l101, *et seq.*; 2) misrepresentations to the Public Employees Insurance Agency ("PEIA") in violation of W. Va. Code § 5-16-12; 3) violations of the Insurance Fraud Act, W. Va. Code § 33-41-11; 4) unjust enrichment; and 5) common law fraud. The State seeks, *inter alia,* insurance payment reimbursement on behalf of its agency, West Virginia Public Employees Insurance Agency ("PEIA"), for excessive payments for Plavix for its member employees.

Invoking diversity jurisdiction, Defendants removed the matter on February 1, 2013, to the United States District Court for the Northern District of West Virginia. In March 2013, the case was transferred to this Court by the MDL Panel, after a determination by the Panel to centralize all suits, subject to its consideration, filed against Defendants related to Plavix. Pending before me is the Plaintiff's motion for remand. The State argues that because this is a *parens patriae* action, this Court lacks diversity jurisdiction. Defendants, on the other hand, maintain that diversity jurisdiction exists because the State of West Virginia is only a nominal party in suit, and the real party is PEIA, a citizen of West Virginia. Defendants also contend that even if the State is the real party, this case is nevertheless removable because it is a "class action" pursuant to the Class Action Fairness Act ("CAFA"), and moreover, substantial and disputed federal issues exist for this Court to exercise its federal question jurisdiction.

I held oral argument on this motion, wherein the parties presented additional arguments and certain concessions on the record. I will cite to the portions of the hearing transcript where appropriate.

## DISCUSSION

### I. Standard of Review

At the outset, because this is a MDL-related proceeding that originated from West Virginia, I must be clear on applicable choice of law rules. The parties, here, agree that under the MDL rules, in transferred diversity-of-citizenship cases, the transferee federal district court is required to apply the

substantive state law of the transferor court, including its choice-of-law rules. *See Paul v. Intel Corp.*, No. 05-1717, 2010 U.S. Dist. LEXIS 144511, at *163 (D. Del. Jul. 28, 2010). And, on issues of federal law or federal procedure, the transferee court applies the law of the circuit in which it sits (here, the Third Circuit). *See Various Plaintiffs v. Various Defendants ("Oil Field Cases")*, 673 F. Supp. 2d 358, 363 (E.D. Pa. 2009) (citing *In re Korean Air Lines Disaster*, 829 F.2d 1171, 1178 (D.C. Cir. 1987)); *see also* Transcript of Hearing Dated August 21, 2013 ("Tr."), T5:11-22.

In a removal matter, the defendant seeking to remove bears the burden of showing that federal subject matter jurisdiction exists; that removal was timely filed; and that the removal was proper. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990), *cert. denied*, 498 U.S. 1085 (1991). Removal statutes are to be strictly construed against removal, and all doubts are to be resolved in favor of remand. *Shamrock Oil and Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941); *Brown v. Francis*, 75 F.3d 860, 865, 33 V.I. 385 (3d Cir. 1996).

## II. CAFA Jurisdiction

As a preliminary issue, Defendants conceded during oral argument that *parens patriae* suits brought by state attorney generals are generally not removable as "class actions" under CAFA. *See* Tr., T46:1-9. In fact, during the pendency of this motion, the Supreme Court addressed this issue in *Mississippi ex rel. Hood v. AU Optronics Corp.*, 134 S. Ct. 736 (2014). The Court essentially held that when a state brings suit on behalf of its citizens and it is

4

the only named plaintiff, the suit is not removable under CAFA. Various other circuits have reached the same conclusion. *See, e.g., Purdue Phrama L.P. v. Kentucky*, 704 F.3d 208 (2d Cir. 2013); *LG Display Co., LTD. v. Madigan*, 665 F.3d 768, 774 (7th Cir. 2011); *Washington v. Chimei Innolux Corp.*, 659 F3d 842, 848-49 (9th Cir. 2011). Accordingly, this Court lacks jurisdiction under CAFA in this case.

## III. West Virginia is the Real Party in Interest

Plaintiff posits that this Court lacks diversity jurisdiction because the State is the real party in interest. The State reasons that the CCPA -- the State's consumer fraud statute -- expressly authorizes the Attorney General to bring suit on behalf of citizens of West Virginia to vindicate its quasi-sovereign interest. Here, in addition to seeking disgorgement of insurance payments on behalf of PEIA, the State claims that it has a substantial pecuniary stake in the outcome of this litigation as it seeks civil penalties, pursuant to W. Va. Code § 46A-7-111(2), against Defendants up to $5,000 for each willful violation of the CCPA, which occurred during the four year period prior to suit being filed. Plaintiff also seeks an injunction to enjoin Defendants from engaging in unfair or deceptive acts or practices in the future relating to the marketing of Plavix.

On the other hand, Defendants submit that despite the CCPA claims brought by the State, this case is essentially an insurance reimbursement action seeking recovery of prescription drug costs expended by PEIA, and consequently, diversity exists because PEIA, a citizen of West Virginia, is the real party. Regarding the State's CCPA claims, Defendants argue that the

5

CCPA does not apply to promotions of prescription drugs because the "learned intermediary" doctrine exempts Defendants from liability. In other words, Defendants insist that because doctors, rather than consumers, decide which drugs to prescribe, the CCPA does contemplate actions involving prescription drugs.

The parties' dispute centers on whether the State of West Virginia is the real party in interest. Rule 17 of the Federal Rules of Civil Procedure provides that:

> [e]very action shall be prosecuted in the name of the real party in interest. . . . No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Fed R. Civ. P. 17(a). According to this Rule, it is clear that diversity jurisdiction is based on the citizenship of the real party in interest. *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980); *Choi v. Kim*, 50 F.3d 244, 246 (3d Cir. 1995) (in determining whether diversity jurisdiction exists, the district court is "required to decide who was the real party in interest under Rule 17(a) of the Federal Rules of Civil Procedure"). Thus, the initial step is to examine if West Virginia, the only plaintiff named in this action, is also the real party in interest. *See Ramada Inns, Inc. v. Rosemount Memorial Park Asso.*, 598 F.2d 1303, 1306 (3d Cir. 1979) (when a state is a party to an action and that "particular case involves a question of diversity jurisdiction, the initial inquiry is [always] the same: is the state the real party in interest to the litigation?"). If

6

it is, then there is no diversity jurisdiction here. *See Harris v. Pa. Tpk. Comm'n*, 410 F.2d 1332, 1333 n. 1 (3d Cir. 1969) (explaining that a state is not considered a citizen for purposes of diversity jurisdiction).

That a state, a state agency, or its officers may have been named as parties in an action is not dispositive of whether that state is the real party in interest, because such a determination can only be derived from the "essential nature and effect of the proceeding." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464 (1945); *Ramada Inns, Inc. v. Rosemount Memorial Park Asso.*, 598 F.2d 1303, 1306 (3d Cir. 1979). Another relevant factor is the stake, if any, which the state has in the outcome of the litigation beyond a general desire that its laws be enforced. *See Ramada Inns*, 598 F.2d at 1307. In other words, a state may sue on behalf of its citizens as *parens patriae* when the interests of a group of citizens are at stake, so long as the state is also pursuing a quasi-sovereign interest. *See Porter*, 659 F.2d at 328; *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 257-58 (1972).

A quasi-sovereign interest "generally arises from either (1) the State itself having suffered injury, such as direct damage to its economy, or (2) the general public having suffered an injury so that no one individual has legal standing to sue." *Commonwealth of Pennsylvania v. National Association of Flood Insurers*, 520 F.2d 11, 22 (3d Cir. 1975) (citations omitted). In short, if a federal judgment will have no effect other than to implicate the state's general "governmental interest in the welfare of all its citizens . . . and in securing compliance with all its laws," *Missouri, Kansas & Texas Ry. Co. v. Missouri R. R.*

7

*& Warehouse Commissioners*, 183 U.S. 53, 60 (1901), then the state is not a real party in interest.

To make the determination of whether a state, such as West Virginia, is seeking relief for its general citizenry or private individuals, a court must examine the State's claims. There are two ways to undertake such an inquiry: either on a claim-by-claim basis, or as a single inquiry that encompasses all the claims, also known as the "whole-case" approach. Unfortunately, the Third Circuit has not had the occasion to endorse either method; however, the Fourth Circuit, which includes district courts in West Virginia, has explicitly adopted the "whole-case" approach. *See South Carolina v. AU Optronics Corp.*, 699 F.3d 385 (4th Cir. 2012), *cert denied*, No. 12-911, 2014 U.S. LEXIS 787 (U.S. Jan. 21, 2014). While Defendants argue that this Court should adopt the claim-by-claim approach set forth by the Fifth Circuit, *see Louisina ex rel. Cadwell v. Allstate Ins. Co.*, 536 F.3d 418, 430 (5th Cir. 2008), I find that the "whole-case" approach is supported by the weight of the authorities around the country.

In reaching my conclusion in this regard, I start with the Third Circuit's general proposition that in deciding whether a state is a real party in interest, courts must look to the "essential nature and effect of the proceeding." *Ramada Inn,* 598 F.2d at 1307. In my view, that language comports with examining the nature of the pleadings as a whole, rather than analyzing one claim at a time. This broader approach is also consistent with the Supreme Court's caution that restraint is particularly important in the removal context

8

in light of the longstanding policy of strictly construing the statutory procedures for removal, *see Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 32 (2002), as well as the sovereignty concerns raised by asserting federal jurisdiction over cases brought by states in their own courts. *See Franchise Tax. Bd. V. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 n.22 (1983) ("[C]onsiderations of comity make us reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it.").

In fact, the claim-by-claim analysis has been questioned by a number of courts. *See Madigan*, 665 F.3d at 773-74 ("federal courts are [not] required to deviate from the traditional 'whole complaint' analysis when evaluating whether a State the real party in interest in a *parens patriae* case")(quotations and citations omitted); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 1827, 2011 U.S. Dist. LEXIS 17793, 2011 WL 560593, *3 (N.D. Cal. Feb. 15, 2011); *Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.*, 686 F. Supp. 2d 942, 945-46 (E.D. Mo. 2010); *Illinois v. SDS West Corp.*, 640 F. Supp. 2d 1047, 1050-53 (C.D. Ill. 2009); *MyInfoGuard, LLC v. Sorrell*, No. 12-074, 2012 U.S. Dist. LEXIS 161070, at * (D. Vt. Nov. 9, 2012). As a result, the "whole-case" approach has emerged as the majority rule. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 219 (2d Cir. 2013); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 669-70 (9th Cir. 2012); *Ohio v. GMAC Mortg., LLC*, 760 F. Supp. 2d 741, 745 (N.D. Ohio 2011) ("[A] majority of jurisdictions . . . have looked at a state's complaint as a whole to determine whether the state is the real-party-in-interest."). In light of the attendant reasoning of the above-cited cases, I adopt

the whole-case approach.

Applying that approach, I find that the State is the real party in interest in this enforcement action. I do not find convincing Defendants' argument that the Complaint "overwhelmingly" seeks to vindicate the specific interests of PEIA, not the State in general. The fact that the State, on behalf of PEIA, also seeks recovery of prescription drug costs expended by PEIA does not undermine the State's broader interest in its case. *Accord Hood v. AstraZeneca Pharmas., LP*, 744 F. Supp. 2d 590, 596 (N.D. Miss. 2010) ("The fact that another party may benefit from a favorable resolution of this case does not minimize or negate the State's substantial interest.").

To be clear, the State asserts causes of action, *inter alia,* for violations of the CCPA, and in that connection, the State seeks civil penalties, as well as a statewide injunction to enjoin Defendants from engaging in unfair or deceptive practices in violation of West Virginia law in the future.[2]  As to the civil penalties, the State is seeking up to $5,000 for each willful violation of the CCPA by Defendants. It is important to note that these penalties sought by the State are distinct from any particular interests of private parties because monies received under § 46A-7-111(2) enure to the State alone. *CVS*

---

[2]  Contrary to Defendants' assertion, as I have fully explained during the hearing, I find that Plaintiff's request for injunctive relief is not moot, despite Defendants' representation that they have currently ceased promotion for Plavix. Tr., T50:3 – T52:19. Indeed, for the purposes of this remand motion, I take Plaintiff's pleadings as true. And, because the Complaint alleges that "[a]t all times material herein BMS/Snofi engaged in illegal marketing practices in West Virginia to promote the use of Plavix by affirmatively representing Plavix was a superior drug to aspirin for certain indicated usages," Compl., ¶ 21, Plaintiff makes clear that the marketing of Plavix is allegedly still ongoing. Therefore, the allegations do not make the injunctive relief moot.

10

*Pharmacy*, 748 F. Supp. 2d at 590. And, it is "well accepted that a state is the real party in interest when it brings a claim for civil penalties because such awards add only to the state's coffers rather than any individual's bank account." *West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 447 (E.D. Pa. 2010); *Connecticut v. Levi Strauss & Co.*, 471 F. Supp. 363, 372 (D. Conn. 1979).

Moreover, the Attorney General of West Virginia is expressly charged with enforcing certain provisions of the CCPA. *See* W. Va. Code § 46A-7-101, *et seq.* And, based on that authority, as a general matter, the Attorney General advances a quasi-sovereign interest when the State seeks relief under the CCPA for the protection and promotion of consumer welfare in the process. *See West Virginia ex rel. McGraw v. CVS Pharm., Inc.*, 748 F.Supp. 2d 580, 595 (S.D. W. Va. 2010), *aff'd* 646 F.3d 169 (4thCir. 2011); *West Virginia ex rel. McGraw v. Fast Auto Loans, Inc.*, No. 12-64, 2013 WL 142868 (N.D. W. Va. Jan. 11, 2013); *West Virginia ex rel. McGraw v. JPMorgan Chase & Co.*, 842 F.Supp. 2d (S.D. W. Va. 2012).

Taken the pleadings as a whole, I am satisfied that the State has concrete interests and a substantial stake in the litigation; put simply, the benefits of the remedies that the State has sought flow to the State as a whole. *Accord Connecticut v. Moody's Corp.*, No. 10-CV-546, 2011 U.S. Dist. LEXIS 780, 2011 WL 63905 at *3-4 (D. Conn. Jan. 5, 2011); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cavicchia*, 311 F. Supp. 149, 155 (S.D.N.Y. 1970) (quoting *Missouri, K. & T. Ry. Co. of Kansas v. Missouri R. & Warehouse*

11

*Comm'rs*, 183 U.S. 53, 59 (1901) ("It may be fairly held that the State is such [a] real party [in interest] when the relief sought is that which enure to it alone, and in its favor the judgment or decree, if for the plaintiff, will effectively operate.")); *In re TFT-LCD*, 2011 WL560593; *Arizona ex rel. Horne v. Countrywide Fin. Corp.*, No. 11-131, 2011 WL 9955963 (D. Ariz. Mar. 21, 2011)(holding that Arizona had an interest in the enforcement of its own states' consumer fraud laws); *Nevada*, 672 F.3d at 670 (finding that Nevada is the real party in interest because it had an interest in protecting the integrity of the mortgage loan service industry through enforcement of its deceptive trade practices statutes).

Also, I underscore the fact that in this suit, the State is seeking the remedy of injunctive relief. This alone supports the position that the State is the only real party in interest. *See La. ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 430 (5th Cir. 2008); *Jim Hood ex rel. Miss. v. JP Morgan Chase & Co.*, 737 F.3d 78, 88 n. 8 (5th Cir. 2013); *Comcast*, 705 F. Supp. 2d at 447 ("Courts have universally accepted the notion that a state is the real party in interest when it brings a claim for injunctive relief because such a remedy protects both current and prospective consumers . . . ."); *Hood ex rel. Miss. v. Bristol-Myers Squibb Co.*, 2013 U.S. Dist. LEXIS 90540, at *13-14 (N.D. Miss. Jun. 27, 2013).

Next, I address Defendants' contention that a duo of West Virginia Supreme Court of Appeals cases, *White v. Wyeth*, 705 S.E. 2d 828 (W. Va. 2010) and *West Virginia ex rel. McGraw v. Bear, Stearns & Co.*, 618 S.E. 2d 582 (W. Va. 2005), precludes the State from bringing CCPA claims because the

12

state consumer fraud statute should not apply to the marketing of prescription drugs.  The West Virginia Supreme Court held in *White* that the CCPA does not apply to ***private*** causes of action involving prescription drugs because doctors, rather than consumers, select which drugs to prescribe to an individual, and consumers are thereby protected by the doctor's medical judgment -- which is known as the learned intermediary doctrine.  *White*, 705 S.E.2d at 837.  I do not find *White* helpful under the circumstances of this case because, in my view, *White*'s decision is limited to private causes of action.

The distinguishing fact here is that the sole plaintiff is the State of West Virginia, and that the State brought this suit to vindicate its quasi-sovereign interests under the CCPA.  In that regard, I find another decision of the West Virginia Supreme Court instructive.  In *West Virginia ex rel. McGraw v. Johnson & Johnson*, the State sued Johnson & Johnson for violations of the CCPA for its allegedly deceptive and misleading promotion of two of its prescription drugs.  704 S.E. 2d 677, 683-84 (W. Va. 2010).  Identical to the instant matter, the Attorney General, there, sought civil penalties and injunctive relief pursuant to the CCPA.  While there is no explicit discussion regarding the learned intermediary doctrine, the Court, nevertheless, permitted the State to pursue CCPA claims against the drug company.[3]  *Id.*  Moreover, there is no

---

[3]   I need not engage in a lengthy discussion why the learned intermediary doctrine does not apply in *parens partiae* cases in West Virginia, because my conclusion here is supported by the West Virginia Supreme Court's decision in *Johnson & Johnson*.  However, I note that when the State brings consumer fraud claims involving prescription drugs pursuant to W. Va. Code §§ 46A-7-111(2), the State does not need to establish reliance or causation, which is a required element in private causes of actions brought by individuals under the

13

provision in W. Va. Code §§ 46A-7-101, *et seq.*, which exempts pharmaceutical companies from liability. Rather, based on the statutory language, the purpose of the CCPA is to "protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 461 S.E. 2d 516, 523 (W. Va. 1995). Indeed, Defendants have not cited to any authority, West Virginia or otherwise, that support their contention in this regard.

Furthermore, Defendants claim that the *Bear, Stearns* decision also precludes the State from bringing CCPA claims concerning an industry – prescription drugs -- that is highly regulated by the federal government. I find that argument unconvincing. In that case, the West Virginia Supreme Court disallowed the State from bringing CCPA claims involving conduct that is ancillary to the buying and selling of securities, a highly specialized and complex industry. *Bear, Stearn*, 618 S.E. 2d at 587. Importantly, the Court specifically stated that "[t]he consumer protection act is essentially designed to protect consumers in the relatively common cash and credit transactions in which they engage on a regular basis." *Id.* There is no doubt that the purchase of prescription drugs is more akin to consumer goods than the types of complex regulated **conduct** involved in *Bear, Stearns*. As such, I do not find *Bear, Stearns* dispositive or relevant.

---

CCPA. In the latter scenario, because individuals must prove damages "as a result of" a defendant's deceptive act, the application of the learned intermediary doctrine is more appropriate. As such, I do not find that *White* is dispositive of the issues in this case.

14

Rather, as the West Virginia Supreme Court has explained, prescription drug cases brought under the CCPA provide an instance in which the federal regulation and the state law consumer protection statutes "serve complementary, though somewhat overlapping, roles." *Johnson & Johnson*, 704 S.E. 2d at 687, n.6.  In that regard, the "degree of federal regulation" in the pharmaceutical industry does not bar the State's claims in the present case because the CCPA claims asserted against Defendants are complementary to any federal regulations. *Id.*

Accordingly, based on the foregoing, I find that the State of West Virginia is a real party in interest,[4] and therefore, diversity jurisdiction is lacking.

## IV.  Federal Question Jurisdiction

Finally, the State maintains that remand is appropriate because the state law claims asserted here do not explicitly arise under federal law, nor do they raise a federal issue that is actually disputed and substantial. As explained below, the Court agrees with Plaintiff that federal question jurisdiction is lacking and that remand is appropriate.

In order to determine whether there is federal question subject matter jurisdiction, the Court must look to Plaintiff's complaint and cannot consider potential federal defenses. *See Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986). Indeed, the majority of cases that come within federal question jurisdiction are those in which federal law creates the cause of action. *See Id.*  However, "in certain cases federal-question jurisdiction will lie

---

[4]  Because I find that the State is a real party in interest, I do not address the ancillary issue whether PEIA is an arm of the State.

15

over state-law claims that implicate significant federal issues." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 312 (2005)(citation omitted). The Supreme Court has recently reaffirmed that the "'special and small category' of cases" in which federal question jurisdiction will predominate over state-law claims that implicate significant federal issues is "slim." *Gunn v. Minton*, 133 S. Ct. 1059 (Feb. 20, 2013) (quoting *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 699, 701 (2006)).

To that end, the Supreme Court has addressed the circumstances in which federal question jurisdiction can predominate over a state law claim that implicates a federal issue:

> [F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

*Gunn*, 133 S.Ct. at 1065.

Importantly, it is not sufficient that the federal issue be significant to the particular parties in the immediate suit; indeed, that will always be true when the state claim "necessarily raise[s]" a disputed federal issue, as *Grable* separately requires. "The substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Id.* at 1066.

Here, Defendant argues that Plaintiff's state law consumer fraud related claims necessarily raise a stated and disputed federal issue, because resolution

16

of those claims requires the application of the Food, Drug, and Cosmetic Act ("FDCA"). Specifically, Defendant argues that the FDCA must be applied to determine the accuracy and sufficiency of Plavix's labeling and marketing, and in doing so, significant federal issues are implicated. The Court assumes for the purposes of this motion, without deciding, that there are stated federal issues in this case that are actually disputed; however, that does not end the Court's inquiry.

Defendant has not shown that the federal issues in this case are substantial. A substantial federal issue is "a serious federal interest in claiming the advantages thought to be inherent in a federal forum," one that "justif[ies] resort to the experience, solicitude, and hope of uniformity that a federal forum offers." *Grable*, 545 U.S. at 312-13. As one court – addressing an identical issue – cogently reasoned:

> the application of the FDCA regulatory regime is not a federal interest that requires the experience, solicitude, or uniformity provided by federal courts. To the contrary, the Supreme Court has recognized that state courts have traditionally handled state claims with embedded FDCA standards. Indeed, the Supreme Court [in *Merrell Dow*] noted that even a novel FDCA issue raised as part of a state cause of action would not typically justify the exercise of federal jurisdiction.

*Or. ex rel. Kroger v. Johnson & Johnson*, 832 F. Supp. 2d 1250, 1257 (D. Or., 2011).

Indeed, regarding the FDCA regime in particular, the Supreme Court has stressed Congress' intent (1) not to create a federal remedy for violations of the FDCA, while (2) selectively declining to pre-empt most state causes of action based on FDCA standards. *Merrell Dow*, 478 U.S. at 814; *see Wyeth v. Levine*,

17

555 U.S. 555, 574-75 (2009); *see also Grable*, 545 U.S. at 318.  To that end, "Congress has affirmatively decided to keep such actions out of federal courts while allowing overlapping regulation and litigation in state forums."  *Marcus v. Medical Initiatives, Inc.*, No. 12-2864, 2013 U.S. Dist. LEXIS 26759, at *14 (Md. Fla. Feb. 27, 2013).  Based on these Supreme Court precedents, there is a strong suggestion that there is no real need in drug-related consumer protection cases for the experience, solicitude, and hope of uniformity that a federal forum offers.  More compelling, within the context of the FDCA regime in particular, the Supreme Court [in *Merrell Dow*] has concluded "that the presence of a claimed violation of the [FDCA] statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."  *Merrell Dow*, 478 U.S. at 814.

Here, the disputed factual issue centers on whether Defendants acted in an unfair and deceptive manner in their marketing and labeling of Plavix.  Other than the fact that Plaintiff's claims may implicate the FDCA -- that is, the FDCA may be consulted or analyzed in establishing certain elements of the state law claims -- that in and of itself is not substantial under *Garble* to support federal question jurisdiction.  For one, this case represents the very type of action the Supreme Court in *Merrell Dow* has cautioned against in finding federal question jurisdiction.  Furthermore, the lack of a federal cause of action under the FDCA weighs heavily in favor of the conclusion that the federal issues in this case are not substantial.

Lastly, Defendants also have not shown that recognizing federal question

jurisdiction in this case would not disrupt the balance struck by Congress between state and federal judicial responsibilities. The substantiality and federalism prongs of *Grable* are closely intertwined. *Gunn*, 133 S.Ct. at 1065. For the same reasons that an embedded FDCA standard does not generally constitute a "substantial" federal issue, the Supreme Court has concluded that Congress did not intend to preclude state courts from hearing FDCA-related actions. *See Wyeth*, 555 U.S. at 574. Thus, if I were to find federal jurisdiction here, I could potentially open the federal courthouse door to a tremendous number of cases, and could therefore upset the congressionally intended division between state and federal courts. *See Grable*, 545 U.S. at 318. *See, e.g., Caldwell ex rel. La. v. Bristol Myers Squibb*, No. 12-443, 2012 U.S. Dist. LEXIS 126042, at * (W.D. La. Jun. 12, 2012) ("were this Court to find that there is federal-question jurisdiction over this action because the FDCA . . . is implicated, that finding would be inconsistent with Congress's judgment regarding the sound division of labor between state and federal courts.") (quotations and citations omitted); *Marcus*, 2013 U.S. Dist. LEXIS 26759 at * 16; *County of Santa Clara ex rel. Marquez v. Bristol Myers,* No. 12-3256, 2012 U.S. Dist. LEXIS 133405, at * (N.D. Cal. Sep. 17, 2012)("State courts 'frequently handle state-law consumer protection suits' that refer to federal issues.")(quoting *Nevada*, 672 F.3d at 675).

In sum, I do not find that this case falls within the narrow exception carved out by *Garble* to justify federal question jurisdiction.

## CONCLUSION

As the removal party, Defendants have the burden of establishing the existence of subject matter jurisdiction; Defendants have failed to do so. Because Plaintiff has only asserted state-law claims, Defendants have failed to demonstrate that substantial federal law issues are implicated in this case for the Court to exercise federal question jurisdiction. Moreover, Defendants also have failed to establish jurisdiction under CAFA. Finally, because the State is the real party in interest, the parties are not diverse in citizenship; this action does not fall within this Court's diversity jurisdiction. Consequently, Plaintiffs' motion for remand is **GRANTED**, and this matter is transferred to the United States District Court for the Northern District of West Virginia for the purpose of remanding this case to the Circuit Court of Marshall County, West Virginia.

An appropriate Order shall follow.


Dated:  February 26, 2014                          /s/     Freda L. Wolfson
                                                   Freda L. Wolfson, U.S.D.J.